

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**10 CIV 8328**

-----------------------------------------------------------x

Anna Efimovna Khaldei,

          Plaintiff

   against

Kalman Kaspiev,

          Defendant

-----------------------------------------------------------x



**COMPLAINT**

1.     Plaintiff – the daughter, heir, and administrator of the estate of the Soviet Union's preeminent World War II photographer Evgeny Khaldei (also known as Efim Khaldei, hereinafter "Mr. Khaldei") – seeks the return of a large and valuable body of her father's photographic prints and negatives.  Defendant, who represented Mr. Khaldei under an agency agreement that terminated upon Mr. Khaldei's death in October 1997, has wrongfully kept the material in violation of a New Jersey Writ and Judgment of Replevin.

2.     The wrongfully withheld material includes 248 (two-hundred and forty-eight) photographs printed by Mr. Khaldei and approximately 3,000 (three-thousand) negatives.  The prints include copies of what is perhaps the most famous image of the Allied victory over Nazi Germany:  the raising of the Soviet flag over the Reichstag during the capture of Berlin.  Sales of this and other of Mr. Khaldei's works have yielded thousands of dollars each at leading international art auction venues.  (See information from Christie's Fine Art Auctions, attached hereto as Exhibit A.)

3.     Plaintiff is a citizen and domiciliary of the Russian Federation.  Defendant is domiciled in the State of New York.  The value of the property sought exceeds $75,000.  Therefore, under 28

U.S.C. § 1332(a)(2), this Court has jurisdiction over the case. Under 28 U.S.C. § 1391(a), venue in this Court is proper, because Defendant resides in New York County.

4.      Since Mr. Khaldei's death, Plaintiff has administered her father's estate, which consists primarily of his photographic works and intellectual property rights associated with them. Plaintiff was formerly known by her married name Anna Efimovna Bibicheva, and took her maiden name again after her divorce from Yuri Bibichev, now deceased.

5.      In March 1997, when Mr. Khaldei was eighty years old, he and Defendant signed an agreement that purported to authorize Defendant to act for 20 (twenty) years as Mr. Khaldei's "worldwide agent" in the promotion and sale of his photographs. The agreement was executed before a New Jersey notary public and described Defendant as "doing business in New Jersey and New York." (A copy of the agreement is attached hereto as Exhibit B.) As noted above, Mr. Khaldei died in October 1997, seven months after signing the agency agreement.

6.      In October 1999, Jeffrey Burt, then a partner in the law firm Arnold & Porter, sent Defendant a letter on Plaintiff's behalf, informing Defendant that his agency agreement with the late Mr. Khaldei was terminated, and demanding the return of all photographic material provided to Defendant by Mr. Khaldei or Plaintiff, including (a) the 248 photographic prints referred to above, which were itemized in a handwritten Russian list attached to the letter, and (b) approximately 3,000 negatives that had been returned to Defendant by Corbis Corporation, which sells rights to use certain Khaldei images. (A copy of Mr. Burt's letter, including the list of 248 prints, is attached hereto as Exhibit C.) Defendant did not respond to a mailing of the letter, and he refused to accept an attempted personal delivery of the letter to him in December 1999 by a mutual friend of Defendant and Mr. Khaldei.

7.     In December 2000, Plaintiff filed a lawsuit against Defendant in New Jersey state court (Superior Court, Morris County, Law Division, No. MRS-L3659-00), seeking the return of all Khaldei photographic prints and negatives in Defendant's possession, as well as damages under claims for breach of contract and conversion. (A copy of the New Jersey complaint, without exhibits, is attached hereto as Exhibit D.)

8.     On January 4, 2001, the New Jersey summons and complaint, as well as a notice of writ and replevin and other related documents, were served on Defendant by personal delivery to Marina Otis, whom the process server described in an affidavit as Defendant's "wife" and who, according to information and belief, at that time shared a household with Defendant and/or was his common-law wife. (A copy of the process server's affidavit is attached hereto as Exhibit E.)

9.     Soon after service of the summons and complaint, the Morris County court ordered the venue of the lawsuit changed to Monmouth County.

10.    On June 21, 2001, the Monmouth County court issued a Writ of Replevin ordering the recovery from Defendant of all Khaldei prints and negatives in Defendant's possession, including 248 prints and 3,000 negatives. (A certified copy of the Writ of Replevin, Superior Court, Monmouth County, Law Division, No. MON-1305-01 is attached hereto as Exhibit F.)

11.    In August 2001, the Monmouth County Sheriff's Office made an unsuccessful attempt to execute the Writ of Replevin at Ms. Otis's residence. According to an affidavit of service of the Writ by the Sheriff's Office, Ms. Otis stated that Defendant was her ex-boyfriend and no longer lived with her, but was living at a New York address that she provided. (A copy of the affidavit by the Sheriff's Office is attached hereto as Exhibit G.) Investigation revealed that Defendant did not live at that address. Defendant did not appear in the New Jersey lawsuit at that time.

12.     In connection with what appears to have been a court-initiated, administrative dismissal of the case (as reflected in a computer docket printout, attached hereto as Exhibit H), the New Jersey court issued a Judgment of Replevin on March 1, 2002.  (A certified copy of the Judgment of Replevin is attached hereto as Exhibit I.)  The New Jersey court did not adjudicate the claims for damages.

13.     As a result of continued efforts to find Defendant, Plaintiff learned Defendant's mobile telephone number in late 2007.  From then until March 2010, Plaintiff and her counsel had several telephone conversations with Defendant about the New Jersey lawsuit.

14.     In a conversation with Plaintiff's counsel in early March 2010, Defendant stated that he did not know any details of the New Jersey lawsuit and had not seen documents from it.  On March 17, 2010, Plaintiff's counsel sent Defendant a letter at a New York City address that Defendant had provided in their last conversation.  The letter enclosed copies of several documents from the New Jersey lawsuit (including the complaint, Writ of Replevin, and Judgment of Replevin), and requested that Defendant return the Khaldei property.  Defendant did not respond to the March 17, 2010 letter.

15.     In April 2010, Plaintiff filed a motion in the New Jersey court to revive the Judgment of Replevin and to reinstate the claims for damages.  Defendant did not respond to the motion.  The court granted the motion, reviving the Judgment of Replevin for twenty years and reinstating the claims for damages.  (See order of May 17, 2010, attached hereto as Exhibit J.)

16.     Defendant submitted *pro se* a letter to the New Jersey court dated June 21, 2010, styled as a request to change the venue of the case to New York and stating his readiness to litigate in New York.  (A copy of Defendant's letter is attached hereto as Exhibit K.)

17.    In response, Plaintiff requested that the New Jersey court dismiss the lawsuit without prejudice and on the condition that Defendant appear in a New York lawsuit. On August 30, 2010, the New Jersey court so ordered. (A copy of the August 30, 2010 order is attached hereto as Exhibit L.)

## COUNT ONE – ENFORCEMENT OF NEW JERSEY JUDGMENT

18.    Plaintiff repeats the preceding allegations.

19.    The New Jersey Writ and Judgment of Replevin are valid and entitled to full faith and credit in the State of New York under the U.S. Constitution, Article IV, § 1 and under 28 U.S.C. § 1738.

20.    Therefore, Plaintiff requests that this Court recognize the New Jersey Writ and Judgment of Replevin, issue a writ of replevin ordering a competent authority to retrieve and deliver to Plaintiff all Khaldei photographic prints and negatives that are in Defendant's possession, and award Plaintiff attorneys' fees and the costs of this suit.

## COUNT TWO – UNLAWFUL POSSESSION OF PROPERTY

21.    Plaintiff repeats the allegations in paragraphs 1-17.

22.    Plaintiff, as Mr. Khaldei's heir and the administrator of his estate, has the sole right to the possession of Mr. Khaldei's works that are in Defendant's possession.

23.    Therefore, Plaintiff requests (1) a writ of replevin authorizing a competent authority to retrieve and deliver to Plaintiff all Khaldei photographic prints and negatives that are in Defendant's possession; (2) a judgment and/or permanent injunction granting Plaintiff permanent possession of such materials and prohibiting Defendant from possessing them, selling them, or

licensing their use; (3) an award of damages arising from Defendant's wrongful detention of the materials; and (4) an award of attorneys' fees and the costs of this suit.

## COUNT THREE – CONVERSION OF PLAINTIFF'S PROPERTY

24.     Plaintiff repeats the allegations in paragraphs 1-17.

25.     Upon information and belief, Defendant has wrongfully interfered with and converted to his own use the Khaldei photographs and negatives in his possession, and has converted to his own use monies belonging to Plaintiff by, among other things, failing to pay the compensation due Plaintiff and by withholding and failing to report revenues earned under Defendant's agreement with Mr. Khaldei.

26.     Therefore, Plaintiff requests a judgment for damages in an amount to be determined, and for attorneys' fees and the costs of this suit.

## COUNT FOUR – BREACH OF CONTRACT

27.     Plaintiff repeats the allegations in paragraphs 1-17.

28.     Mr. Khaldei performed his obligations under his agreement with Defendant.

29.     Plaintiff, as administrator of Mr. Khaldei's estate, has performed the estate's obligations under Mr. Khaldei's agreement with Defendant.

30.     Defendant has materially breached the agreement, including by failing to pay or account for revenues derived under the agreement.

31.     Therefore, Plaintiff requests a judgment for damages in an amount to be determined, and for attorneys' fees and the costs of this suit.

## COUNT FIVE – DECLARATORY JUDGMENT AND INJUNCTION

32.     Plaintiff repeats the allegations in paragraphs 1-17.

33.     By law, the agency agreement terminated upon Mr. Khaldei's death.

34.     The agency agreement also terminated as a result of Plaintiff's notice to Defendant of termination.

35.     Defendant has wrongfully held himself out as Mr. Khaldei's agent and has refused to acknowledge termination of the agency agreement.

36.     Therefore, Plaintiff requests a judgment declaring that the agency agreement is terminated, enjoining Defendant from holding himself out as Mr. Khaldei's agent, and awarding Plaintiff attorneys' fees and the costs of this suit.

## DEMAND FOR JURY TRIAL

37.     Plaintiff demands trial by jury on all issues so triable.

Daniel J. Rothstein (DR 5440)
Attorney for Plaintiff
Law Office of Daniel J. Rothstein, P.C.
747 Third Avenue, 32nd Floor
New York, NY 10017
tel. 212-207-8700
fax 212-207-8710
djr@danielrothstein.com

November 4, 2010