```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ANNA EFIMOVNA KHALDEI,                          :

                Plaintiff,                      :    OPINION & ORDER

        -v.-                                    :
                                                     10 Civ. 8328 (JFK) (GWG)
KALMAN KASPIEV,                                 :

                Defendant.                      :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Anna Efimovna Khaldei brings this motion seeking sanctions for spoliation of evidence against defendant Kalman Kaspiev. Khaldei also seeks to reinstate Point II of her summary judgment motion. For the reasons stated below, these motions are denied.

I.      BACKGROUND

        A.      The Nature of the Action and the Spoliation Allegations

This lawsuit concerns ownership of certain photographs, consisting of both prints and negatives, taken by Khaldei's father, Evgeny Khaldei. See Complaint, filed Nov. 4, 2010 (Docket # 1), ¶¶ 1–2, 23. Kaspiev had an agency relationship to promote and sell the photographs. Id. ¶¶ 1, 5. Khaldei terminated the parties' agency relationship in 1999 and alleges that Kaspiev has unlawfully withheld the photographs since then. Id. ¶¶ 2, 6, 15, 20, 23. Khaldei obtained a judgment of replevin for the photographs from the Superior Court of New Jersey on June 21, 2001, which has never been executed and whose validity is being contested in this suit. Id. ¶¶ 7–10, 14, 19, 20; Kalman Kaspiev's Memorandum of Law in Support of His Cross-Motion for Partial Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment, filed Mar. 20, 2012 (Docket # 75) ("Def. SJ Motion"), at 9–22. On

1

November 4, 2010, Khaldei, appearing through pro bono counsel, filed this action seeking enforcement of the New Jersey judgment, damages for breach of contract, unlawful possession of property, and conversion, and a declaratory judgment enjoining Kaspiev from holding himself out as Evgeny Khaldei's agent.  Id. ¶¶ 18–36.

Several weeks after the lawsuit was filed, Kaspiev obtained pro bono counsel, who filed a notice of appearance on January 20, 2011.  On February 10, 2011, Khaldei's counsel sent an email to Kaspiev's counsel asking if Kaspiev would agree to an inspection of the photographs.  Email Exchange between Jennifer L. Jones and Daniel Rothstein, dated Feb. 10, 2011 (annexed as Ex. 6 to Affirmation of Counsel for Plaintiff, filed June 6, 2013 (Docket # 97) ("Rothstein Decl.")) ("Feb. 10 Email Exchange").  The email referred to a prior discussion between counsel about a proposed interrogatory "regarding the location, condition, insurance status, etc. of the materials described in the complaint."  Id.  Kaspiev's counsel responded that she was still in the process of "fact-gathering," that discovery was premature, and that she would contact plaintiff's counsel in several days.  Id.[1]

On March 2, 2011, Khaldei's counsel emailed Kaspiev's counsel to inquire about the location of the materials.  Email Exchange between Jennifer L. Jones and Daniel Rothstein,

---

[1] Kaspiev asserts that he did not disclose the location of the materials because he feared that Khaldei would attempt to seize them unlawfully.  See Kalman Kaspiev's Memorandum of Law in Opposition to (i) Plaintiff's Motion for Spoliation Sanctions and (ii) Request to Reinstate the Withdrawn Portions of her Partial Summary Judgment Motion, filed June 27, 2013 (Docket # 99) ("Opp. Mem."), at 4; see also Letter from Jennifer L. Jones to the Honorable John F. Keenan, dated Mar. 18, 2011 (annexed as Ex. 14 to Rothstein Decl.), at 2.  Khaldei contends that Kaspiev was seeking to hinder execution of a lawful court order.  See Memorandum of Law in Support of Plaintiff's Motion for Spoliation Sanctions and for Reinstatement of the Withdrawn Portions of Plaintiff's Motion for Partial Summary Judgment, filed June 6, 2013 (Docket # 96) ("Pl. Mem."), at 5, 14; Reply Memorandum on Plaintiff's Motion for Spoliation Sanctions and for Reinstatement of the Withdrawn Portion of Her Partial Summary Judgment Motion, filed July 8, 2013 (Docket # 106) ("Pl. Reply"), at 8–9.

dated Mar. 8–9, 2011 (annexed as Ex. 9 to Rothstein Decl.).  In response, Kaspiev's counsel declined to disclose the location of the photographs.  See id. at 2.  On March 7, 2011, Kaspiev made initial disclosures pursuant to Fed. R. Civ. P. 26(a) that did not include the location of the photographs.  Defendant Kaspiev's Initial Disclosures, dated Mar. 7, 2010 [sic] (annexed as Ex. 7 to Rothstein Decl.).  On March 8, 2011, Kaspiev placed the photographs in a storage locker at Manhattan Mini Storage LLC, and signed a storage contract.  Declaration of Kalman Kaspiev, dated June 24, 2013 (Docket # 100) ("Kaspiev Decl."), ¶¶ 4–5; Self-Service Storage Facility Occupancy Agreement, dated Mar. 8, 2011 (annexed as Ex. 8 to Rothstein Decl.).

On March 9, 2011, Khaldei served her first set of interrogatories and a Notice of Inspection.  See Plaintiff's First Set of Interrogatories and Notice of Inspection, dated Mar. 9, 2011 (annexed as Ex. 10 to Rothstein Decl.) ("Notice of Inspection").  This included the following request to inspect the materials:

1. Plaintiff hereby requests permission (i) to inspect the photographic materials that Defendant received as agent for Evgeny Khaldei, Plaintiff, or Leonid Khaldei and that are in Defendant's possession, custody, and control, and (ii) for the purpose of such inspection, to enter the location where Defendant keeps the materials. . . .

3. The inspection shall include verification of the existence of the photographic materials, examination of their condition, and examination of the conditions in which they are stored (e.g., temperature and humidity).

See Notice of Inspection at 2–3.

Following the parties' failed attempt to agree on a preservation order, the Honorable John F. Keenan ordered the materials impounded.  See Order, dated Mar. 29, 2011 (Docket # 18) ("Impoundment Order").  On April 8, 2011, Kaspiev, his counsel, plaintiff's counsel, and two United States Marshals went to Manhattan Mini Storage to impound the materials.  Rothstein

3

Decl. ¶ 4; Declaration of Jennifer L. Jones, dated June 27, 2013 (Docket # 102) ("Jones Decl."), ¶ 10; Kaspiev Decl. ¶ 8. 254 prints and 3001 negatives were taken. Opp. Mem. at 7; Pl. Mem. at 7; Kaspiev Decl. ¶ 9. Following this impoundment, Khaldei's counsel withdrew the first set of interrogatories and the Notice of Inspection in an email exchange with Kaspiev's counsel on March 31, 2011, in which he agreed that the interrogatories and notice of inspection were "moot." See Email Exchange between Daniel Rothstein and Jennifer L. Jones, dated Mar. 31, 2011 (annexed as Ex. 18 to Rothstein Decl.).

Notwithstanding this withdrawal, there remained a document request for "[a]ll documents concerning storage of photographic materials that Defendant has received in connection with his agency for Evgeny Khaldei." See Plaintiff's First Request for Production of Documents, dated Mar. 11, 2011 (annexed as Ex. 11 to Rothstein Decl.), ¶ 19. Kaspiev originally objected to this request but ultimately agreed to look for such documents while maintaining a relevance objection. Pl. Mem. at 6; Email from Jennifer L. Jones to Daniel Rothstein (May 25, 2013, 7:59 P.M.) (annexed as Ex. 22 to Rothstein Decl.). In an email exchange between the parties' counsel on May 25 and 26, 2011, plaintiff's counsel asserted that documents responsive to this request were relevant as "further evidence of Defendant's whereabouts when notice of termination was sent and process was served." See Email Exchange between Daniel Rothstein and Jennifer L. Jones, dated May 25–26, 2011 (annexed as Ex. 2 to Jones Decl.); Jones Decl. ¶ 14. Kaspiev never produced documents in response to this request. See Jones Decl. ¶ 16. Kaspiev has submitted a sworn statement that he looked for the agreement he signed with Manhattan Mini Storage but could not find it. See Kaspiev Decl. ¶ 6.

Since the April 2011 impoundment, Kaspiev has produced additional photographs. Specifically, in September 2011, Kaspiev provided for impoundment 30 additional negatives that

4

he stated he had located in an envelope in his apartment. Kaspiev Decl. ¶ 11; Declaration of Margaret A. Dale, dated June 27, 2013 (Docket # 101) ("Dale Decl."), ¶ 2; Opp. Mem. at 7–8. In response to this additional production, Khaldei's counsel reiterated the request for documents concerning storage and requested disclosure of the storage location of those negatives. See Email Exchange between Daniel Rothstein and Jennifer L. Jones, dated Nov. 14, 2011–December 15, 2011 (annexed as Ex. 26 to Rothstein Decl.), at 3. He also asked that he be permitted to inspect the location where these negatives had been kept. Id. at 2. Kaspiev's counsel responded that the negatives had been found at Kaspiev's apartment in Manhattan and that plaintiff could not inspect the location. Id. at 1. Kaspiev later produced additional photographs that he believes are unrelated to the agency relationship. Kaspiev Decl. ¶¶ 12–14; Opp. Mem. at 7–8. Kaspiev has also stated that he kept four additional prints that Evgeny Khaldei took of him and his family which he also believes are not covered by the agency agreement. Kaspiev Decl. ¶¶ 15–16.[2]

In response to a subpoena from Khaldei, Manhattan Mini Storage produced a copy of its storage agreement with Kaspiev, which is dated March 8, 2011. Pl. Mem. at 8; Self-Service Storage Facility Occupancy Agreement. Khaldei then issued additional interrogatories requesting information about storage of the materials before they were moved to the Manhattan Mini Storage facility, to which Kaspiev responded. See Defendant Kaspiev's Responses and Objections to Plaintiff's Fourth Set of Interrogatories, dated May 8, 2013 (annexed as Ex. 35 to Rothstein Decl.). Kaspiev stated that (1) from 1997–1998, he stored the prints at the home of

---

[2] Kaspiev also states that he gave four prints to a law firm in gratitude for pro bono services that the firm provided him. Id.; Kaspiev Decl. ¶ 4; Letter from Jennifer L. Jones to Daniel Rothstein, dated Aug. 8, 2011 (annexed as Ex. 23 to Rothstein Decl.). The law firm, however, has stated that Kaspiev was never its client. Pl. Mem. at 7.

Marina Otis in Long Branch, New Jersey, (2) from 1998 until 2001, he stored the prints at his sister's apartment in Brooklyn, New York, and (3) from 2001 until 2011, he stored the prints at his apartment in New York, New York.  Id. at 2–3.  He asserted that all these locations had air conditioning, temperature controls, and ventilation.  Id.

  B. Procedural History

Prior to the close of discovery, Khaldei filed a motion for partial summary judgment.  See Motion for Partial Summary Judgment, filed Mar. 19, 2013 (Docket # 59).  Kaspiev made a cross-motion for partial summary judgment.  See Notice of Defendant and Counterclaim Plaintiff Kalman Kaspiev's Cross-Motion for Partial Summary Judgment, filed Mar. 20, 2013 (Docket # 68).  The Court stayed certain elements of discovery pending the disposition of the pending motions.  Order, filed Apr. 22, 2013 (Docket # 92) ("Apr. 22 Order").  On June 6, 2013, Khaldei filed the instant motion for sanctions.[3]

II. LAW GOVERNING MOTIONS FOR SANCTIONS

Spoliation is "'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)); accord Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 288 (S.D.N.Y. 2009).  "Although a district court has broad discretion in crafting a proper sanction for spoliation, . . . the applicable sanction should be

---

[3] See Notice of Motion, filed June 6, 2013 (Docket # 95); Pl. Mem.; Rothstein Decl.; Opp. Mem.; Dale Decl.; Kaspiev Decl.; Jones Decl.; Declaration of Michael P. Richter, filed June 27, 2013 (Docket # 103); Pl. Reply; Reply Affirmation of Counsel for Plaintiff, filed July 8, 2013 (Docket # 107).

molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." West, 167 F.3d at 779 (citation omitted); accord Adorno v. Port Auth. of N.Y. & N.J., 258 F.R.D. 217, 227–28 (S.D.N.Y. 2009).

A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim. Byrnie, 243 F.3d at 109; accord Centrifugal Force, Inc. v. Softnet Commc'n, Inc., 783 F. Supp. 2d 736, 740–41 (S.D.N.Y. 2011) (citing White v. Fuji Photo Film USA, Inc., 2009 WL 1528546, at *1 (S.D.N.Y. June 1, 2009); Adorno, 258 F.R.D. at 227). These elements are (1) that "the party having control over the evidence . . . had an obligation to preserve it at the time it was destroyed"; (2) that the evidence was "destroyed with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense. Byrnie, 243 F.3d at 107–09 (alteration in original) (internal citations and quotation marks omitted). Any sanction imposed should be designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." West, 167 F.3d at 779 (internal citations and quotation marks omitted). Additionally, "[i]t is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy. The choices include — from least harsh to most harsh — further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal." Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., Inc., 685 F. Supp. 2d 456, 457 (S.D.N.Y. 2010) (internal citations omitted), abrogated on other grounds by Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135 (2d Cir. 2012).

III.  DISCUSSION

In her memorandum in support of the motion for sanctions for spoliation of evidence,

Khaldei asserts (1) that Kaspiev destroyed evidence that he was required to preserve and produce; (2) that the destroyed evidence was harmful to his case; and (3) that he destroyed the evidence in "bad faith."  Pl. Mem. at 9–16.  As a sanction for this alleged destruction of evidence, Khaldei argues that "Defendant should be precluded from testifying that he deposited with the Court all materials he received from Plaintiff or all materials that he agreed to receive from Corbis," Pl. Mem. at 16 — a company that also had a licensing agreement with Evgeny Khaldei, id. at 3.

### A. Destruction of Evidence

Inasmuch as the spoliation doctrine is predicated on "evidence actually exist[ing] and [being] destroyed," Orbit One Commc'ns v. Numerex Corp., 271 F.R.D. 429, 441 (S.D.N.Y. 2010) (italics omitted) (internal citation and quotation marks omitted), we first examine what evidence Khaldei asserts has been destroyed by Kaspiev.  Khaldei gives various formulations of the nature of this evidence but essentially argues that Kaspiev destroyed "the physical evidence of the materials' prior location," Pl. Mem. at 2; see also Pl. Mem. at 11 ("Defendant destroyed the physical evidence of the materials' being situated at their prior location.").  In other words, Khaldei contends that Kaspiev destroyed evidence by moving the photographs to Manhattan Mini Storage on March 8, 2011.  Pl. Mem. at 2; Reply Mem. at 2–3.[4]

Notwithstanding Khaldei's arguments, we reject the notion that the act of moving the photographs to Manhattan Mini Storage constituted the destruction of evidence relevant to this case.  The "location" in which the photographs were stored has not in fact been destroyed.  That

---

[4] Khaldei's original brief suggested that he was also seeking sanctions based on Kaspiev's failure to produce his contract with Manhattan Mini Storage.  See, e.g., Pl. Mem. at 11.  He has since withdrawn that argument.  Pl. Reply at 10.

is, there is no evidence that Khaldei destroyed or otherwise altered his Manhattan apartment — other than by removing the photographs from it. To the extent Khaldei is suggesting that temperature, humidity, or other conditions of the apartment are relevant to this case, Pl. Mem. at 2–3, there is no evidence that these have been destroyed or altered in any way. To the extent Khaldei is arguing that the location of the photographs in the apartment would have made an inventory more easily accomplished, id at 16, this argument does nothing to show that there was destruction of significant alteration of actual evidence – that is, the photographs themselves. The circumstances of this case thus distinguish it from the cases cited by plaintiff in which the party seeking sanctions needed to examine certain items in situ in order to provide evidence as to issues being litigated in those cases. Pl. Mem. at 15-16 (citing Community Association Underwriters of America, Inc. v. Rhodes Development Group, Inc., 2013 WL 818596, *10 (M.D. Pa., March 5, 2013); Fines v. Ressler Enterprises, Inc., 820 N.W.2d 688, 693 (N.D. 2012)). Here, plaintiff can perform a full inspection of the photographs and their condition no matter where they are located. Indeed, he has already done so.

In sum, because plaintiff's argument that there has been any actual loss of evidence relevant to the claims or defenses in this case amounts to pure speculation, it is insufficient to sustain a motion for spoliation sanctions. Cf. Tri–County Motors, Inc. v. Am. Suzuki Motor Corp., 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007) ("[S]peculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence."). For this reason alone, the motion for spoliation sanctions must be denied.[5]

---

[5] To the extent Khaldei is complaining that Kaspiev has not allowed her to inspect his apartment, Pl. Mem. at 10, or has not fully answered interrogatories about the prior locations of photographs that were produced after the initial impoundment, see Pl. Mem. at 12, these purported failures are simply contentions that Kaspiev has failed to comply with discovery

B.     Obligation to Preserve

Even if it could be said that Kaspiev destroyed evidence regarding the location of the photographs merely by moving them, Khaldei would still have to show that Kaspiev "had an obligation to preserve [this evidence] at the time it was destroyed." Byrnie, 243 F.3d at 107 (internal citation and quotation marks omitted).  Khaldei argues that Kaspiev was on notice to preserve evidence of the disputed materials' location and conditions because (1) the judgment in New Jersey state court "required Defendant to return all Khaldei prints and photographs in Defendant's possession," Pl. Mem. at 10, and (2) in February 2011, Khaldei asked Kaspiev if she could inspect the materials and proposed serving an interrogatory "regarding the location, condition, insurance status, etc. of the materials described in the complaint," id. (internal quotation marks omitted); Feb. 10 Email Exchange.

These two circumstances, however, did nothing to put Khaldei on notice that the existence of the photographs in a particular location was needed by Khaldei to prove a claim that was being made or would be made in this action.  At most, these circumstances suggest only that plaintiff required that the photographs be properly kept pending the determination of plaintiff's suit.  They certainly would not have alerted Kaspiev that he was under an obligation to preserve the location of the items exactly as they were and was barred from moving them even to a more suitable storage location.  Khaldei stresses that she notified Kaspiev on March 2, 2011, that "his initial disclosures must state the location of the materials." Pl. Mem. at 11.  However, knowledge that Khaldei was seeking a written response regarding the location of the materials

---

demands.  They do not amount to acts of spoliation by Kaspiev.  Nor, to the Court's knowledge, have these matters ever been brought to the Court's attention in accordance with Local Civil Rule 37.1 and this Court's Individual Practices.

does not suggest that Kaspiev was required to maintain the photographs in a particular location.

Khaldei also cites her March 9, 2011 Notice of Inspection, which seeks an "examination of the conditions in which [the photographs] are stored." See Notice of Inspection ¶ 3. This Notice does not change the analysis — most obviously because it was issued only after Khaldei had already moved the photographs to Manhattan Mini Storage. In any event, the Notice does not alter the fact that the actual claims made in the lawsuit did not purport to relate to the conditions or location in which the photographs were being stored. The Complaint makes no mention of this issue. Instead, it seeks to obtain possession of the photographs and seeks money damages for breaching the agency agreement.

Thus, Kaspiev was not on notice that he should preserve the photographs in their precise location for the duration of the lawsuit.

C. Culpable State of Mind

A party seeking spoliation sanctions must also show that the evidence was destroyed "with a culpable state of mind." Byrnie, 243 F.3d at 109. The Second Circuit has held that this prong of the spoliation test may be satisfied by showing that the evidence was destroyed "knowingly" or "negligently." Id.

Here, even if Khaldei had demonstrated that any of the other elements of spoliation had been met, she has failed to show that Kaspiev acted with a culpable state of mind in moving the photographs to Manhattan Mini Storage on March 8, 2011, or in moving the photographs he found subsequently in an envelope to the impoundment location. Kaspiev does not even argue that the photographs were more safely kept at Khaldei's apartment than at the storage facilities. There is thus no evidence that Khaldei's decision to move the items to the storage facility was even negligent.

Khaldei seems to suggest that Kaspiev removed the items from their original location in order to prevent Khaldei from inspecting these locations and finding more photographs relevant to this litigation. Pl. Reply at 1 ("As a result, Plaintiff cannot determine . . . whether Defendant surrendered all of [the relevant materials] to the Court."). But even if this were true, it would not show a culpable state of mind with respect to preservation of evidence regarding the "locations" and "conditions" under which the photographs were kept. Nor, contrary to Khaldei's argument, see Pl. Reply at 10, does the fact that Kaspiev failed to keep a copy of the storage agreement reflect any culpability on his part with respect to the decision to move the photographs in the first place.

In sum, Khaldei has failed to meet her burden to show that Kaspiev committed spoliation of evidence.

IV.     REINSTATEMENT OF POINT II OF SUMMARY JUDGMENT MOTION

Khaldei also seeks to reinstate Point II of her motion for summary judgment, which was filed before the completion of discovery. Khaldei asserts, Pl. Mem. at 16, that she has only recently learned Kaspiev did not store the photographs with appropriate security or climate conditions and "[t]herefore" she seeks to reinstate Point II of her motion, which related largely to the failure to preserve the photographs and the failure to promote them, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment on All of Her Claims Except the Amount of Damages (with corrections, Feb. 26, 2013), filed Mar. 19, 2013 (Docket # 60). The Court fails to understand the connection between these two matters. The withdrawal of Point II of Khaldei's summary judgment motion came about because Kaspiev's brief opposed this Point in part because he had not yet had the opportunity to take Khaldei's deposition. See Def. SJ Motion at 24. At a conference where the Court attempted to set a deadline for depositions,

plaintiff sought to postpone discovery, see Transcript of Civil Cause for Status Conference before the Honorable Gabriel W. Gorenstein, dated Apr. 22, 2013 (Docket # 104) ("Apr. 22 Tr."), at 2–10, and then agreed to withdraw Point II of her motion in order to obtain a stay of party depositions and expert discovery, id. at 24–25. The Court thereupon stayed the depositions of plaintiff, the defendant, and plaintiff's experts based on plaintiff's agreement. Apr. 22 Order.

Khaldei's briefing makes no suggestion that she is withdrawing her request to stay discovery. If, however, Khaldei withdraws her request to stay this discovery, the Court will set a schedule for the completion of discovery and schedule the re-briefing of Point II with a full evidentiary record.

## V.   CONCLUSION

For the foregoing reasons, Khaldei's motion for sanctions for spoliation of evidence and for reinstatement of Point II of her summary judgment motion (Docket # 95) is denied.

Dated: August 7, 2013
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge