USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec. 5, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
ANNA EFIMOVNA KHALDEI,            :
                                 :
              Plaintiff,         :
                                 :       No. 10 Civ. 8328 (JFK)
     -against-                   :          **OPINION & ORDER**
                                 :
KALMAN KASPIEV,                  :
                                 :
              Defendant.         :
------------------------------X

<u>APPEARANCES</u>

FOR PLAINTIFF ANNA EFIMOVNA KHALDEI:
     Daniel Rothstein

FOR DEFENDANT KALMAN KASPIEV:
     Margaret Dale
     PROSKAUER ROSE LLP


**JOHN F. KEENAN, United States District Judge:**

     Plaintiff Anna Efimovna Khaldei and Defendant Kalman

Kaspiev have each moved for summary judgment on various issues

in the instant litigation.  This Opinion contains the Court's

rulings on each motion in turn.

### I.   Background

#### A.   Facts and Procedural History

     Plaintiff is the daughter and heir of the late World War II

photographer Evgeny Khaldei ("Evgeny").  Plaintiff alleges that

in March 1997, shortly before Evgeny's death, Evgeny entered

into an agency agreement with Defendant.  The agreement stated

that Defendant would act as Evgeny's worldwide agent for twenty

years for the "promotion and sale of photographs produced for sale from the negatives." (Rothstein Aff. Ex. 2.)  The next day, Evgeny entered into a licensing agreement with Corbis, a digital archive that licenses images to third parties.  Among other provisions, the Corbis agreement called for Evgeny, Defendant, and Corbis to select images for licensing, and for Evgeny to transport the original negatives they selected to Corbis, which would return them to Evgeny after scanning them. (Rothstein Aff. Ex. 3.)

Despite the licensing agreement's provision to the contrary, Defendant later instructed Corbis to return the negatives directly to him. (Rothstein Aff. Ex. 5.)  Defendant claims that he did this because Evgeny had wanted him to oversee the donation or sale of the images to the U.S. Library of Congress. (Def. Br. at 3–4.)  The negatives returned to Defendant by Corbis, as well as a disputed number of photographs given by Plaintiff to Defendant in December 1997 (collectively, the "Materials"), are at the heart of this litigation.

After Evgeny's death, Plaintiff and Defendant initially agreed that Defendant would continue to serve as agent. However, the parties began to disagree about issues such as the splitting of royalties and costs, and whether Plaintiff and Defendant were each fulfilling their obligations under the

agency agreement.  Ultimately, Plaintiff's prior counsel tried
to contact Defendant and terminate the agency agreement, using
an address and telephone number for Defendant in Long Branch,
New Jersey.  The attorney's calls were not returned and the
letter was returned undeliverable. (Rothstein Aff. Ex. 25;
Richter Dec. Exs. 13, 14.)

In January 2001, Plaintiff initiated a lawsuit against
Defendant in New Jersey state court for replevin and damages.
She repeatedly attempted to serve Defendant at the same Long
Branch address.  In an affidavit filed in the New Jersey court,
the process server stated that he left the papers with
Defendant's wife. (Rothstein Aff. Ex. 27.)  However, the woman
living there, Marina Otis, maintains that she was never
Defendant's wife, although they had once been in a relationship,
and that while Defendant had stayed at her Long Branch house
previously, he had moved by January 2001.  Otis further asserts
that she explained this to the process server, who apparently
returned to the house later that day and taped the papers to her
door.  Otis sent the service papers to the clerk of court in New
Jersey, along with a letter explaining that Defendant no longer
lived with her.  Notwithstanding her efforts, the Monmouth
County Sheriff's Office tried to execute a writ of replevin at
her house in August 2001.  Otis told the officer that Defendant

no longer lived there but gave him a new address for Defendant
on 93rd Street in Manhattan. <u>See generally</u> Otis Dec. & Ex. 1.

Relying on this now-disputed service, Plaintiff eventually
obtained a default judgment of replevin in New Jersey state
court in 2002. Plaintiff did not pursue her damages claims
because she could not find Defendant, and the court
administratively dismissed the case. (Pl. Br. at 4.) Defendant
contends that he learned of the action against him at some point
"between 2003 and 2005," but when he went to the courthouse, the
clerk told him that the case had already been dismissed. (Def.
Br. at 7.)

Plaintiff or her counsel finally reached Defendant by
telephone in 2007, and thereafter had several discussions about
settling the dispute. (Pl. Aff. ¶ 18.) Those discussions bore
no fruit. In 2010, Plaintiff revived her New Jersey judgment
against Defendant and reasserted her damages claims. In a
letter to the New Jersey court, Defendant requested that the
case be transferred to New York because he could not travel to
New Jersey to contest the action. (Pl. Br. at 4–5.) Plaintiff
consented, the instant action was opened, and Defendant found
pro bono counsel. Since then, the parties have vacillated
between settlement negotiations and rancorous motion practice.

### B.   The Instant Motions

Although these summary judgment motions have been fully briefed for several months, their resolution has been delayed by the parties' actions since that time.  It is appropriate to set forth those developments before turning to the merits analysis.

The instant motions were first discussed at a status conference on February 5, 2013, when Plaintiff's counsel announced his intention to move for summary judgment on various issues prior to the close of discovery.  Defense counsel objected, in part because significant discovery had yet to take place.  This Court set a briefing schedule whereby Plaintiff would make her motion and Defendant could either respond substantively or attempt a showing that consideration of the motion would be premature under Rule 56(d) of the Federal Rules of Civil Procedure.  The Court also stated that settlement negotiations and discovery regarding damage to the Materials should continue in the interim.

After another round of quarreling about the briefing schedule, Plaintiff served her summary judgment motion on February 26, 2013.  Plaintiff's motion was essentially twofold. First, she sought to take possession of the Materials, which are currently deposited at a Cirkers art storage facility pursuant to the Court's impoundment order of March 29, 2011. (ECF No.

5

18.)  As part of this request, Plaintiff sought enforcement of
the New Jersey default judgment against Defendant.  Second,
Plaintiff moved for summary judgment on liability for damages to
the Materials.

Defendant opted to cross-move for summary judgment, seeking
a declaration that the default judgment against him was
unenforceable on the ground that he was never properly served.
He also sought summary judgment regarding his claim to half of
the royalties accruing from Evgeny's licensing agreement with
Corbis.  In addition to his motions, Defendant asserted that the
incomplete factual record and existence of disputed facts
precluded summary judgment on Plaintiff's liability motion under
Rule 56(d).

The cross-motions were fully briefed by April.  But they
came up at a conference with Magistrate Judge Gorenstein later
that month, in part because Plaintiff's counsel sought to delay
certain discovery, including depositions of Plaintiff's experts.
Ultimately, Plaintiff agreed to withdraw the second aspect of
his summary judgment motion, liability for damage to the
Materials, in exchange for the stay of discovery. (ECF Nos. 92,
104.)

Thus, the remaining cross-motions were once again ready to
be argued and decided.  But not for long:  in mid-May,

Plaintiff's counsel sought and obtained leave from Judge
Gorenstein to make yet another motion, this time for spoliation
sanctions. (ECF No. 94.)  This would not have affected the
instant summary judgment motions, except that the moving papers
Plaintiff filed in June also included an application for
reinstatement of her liability motion. (ECF No. 96 at 14–16.)
Because that application placed the scope of the instant motions
into dispute, this Court suspended consideration of the cross-
motions while the parties litigated before Judge Gorenstein.

Plaintiff's new motion was fully briefed in July, and Judge
Gorenstein issued his ruling on August 7. See Khaldei v.
Kaspiev, --- F. Supp. 2d ----, 2013 WL 4016497 (S.D.N.Y. 2013).
Judge Gorenstein denied both Plaintiff's sanctions motion and
her application to reinstate her summary judgment motion on
liability. See id.  As to the latter, Judge Gorenstein noted
that

> the withdrawal of Point II of Khaldei's summary
> judgment motion came about because Kaspiev's brief
> opposed this Point in part because he had not yet had
> the opportunity to take Khaldei's deposition.  At a
> conference where the Court attempted to set a deadline
> for depositions, plaintiff sought to postpone
> discovery, and then agreed to withdraw Point II of her
> motion in order to obtain a stay of party depositions
> and expert discovery.  The Court thereupon stayed the
> depositions of plaintiff, the defendant, and
> plaintiff's experts based on plaintiff's agreement.

Id. at *7 (citations omitted).  Judge Gorenstein concluded that, consistent with the parties' earlier agreement, Plaintiff's motion for summary judgment on liability could be considered only if Plaintiff withdrew her request to stay the relevant discovery.  Id.

Plaintiff chose instead to file an objection to Judge Gorenstein's ruling.  The matter was re-briefed by the parties in September, and oral argument was heard by this Court the following month.  On November 4, 2013, this Court issued an Opinion overruling Plaintiff's objection and upholding Judge Gorenstein's ruling in its entirety.  See Khaldei v. Kaspiev, No. 10 Civ. 8328, 2013 WL 5903427 (S.D.N.Y. Nov. 4, 2013).

In sum, as far as the Court can discern, very little of substance has been accomplished in this litigation for nearly a year.  Party and expert depositions remain stayed, and the most recent attempt at settlement proved fruitless.  The Court now turns to the extant summary judgment motions before it.

## II.  Discussion

### A.  Summary Judgment Legal Standard

Summary judgment is warranted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the

8

governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996). The party seeking summary judgment bears the burden of demonstrating the absence of any genuine factual dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

The Second Circuit has stated that it may be inappropriate to enter summary judgment prior to the close of discovery, because "[t]he nonmoving party must have 'had the opportunity to discover information that is essential to his opposition.'" Trebor Sportswear Co. v. The Ltd. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) (quoting Anderson, 477 U.S. at 250 n.5). Accordingly, "summary judgment should only be granted if after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 303–04 (2d Cir. 2003) (alterations and internal quotation marks omitted).

### B.  The Parties' Cross-Motions for Summary Judgment on the New Jersey Default Judgment

### 1.  Whether the New Jersey Default Judgment Is Enforceable

Plaintiff argues that she is entitled to summary judgment "on her right to posses [sic] the impounded photographs and negatives" by virtue of the 2001 New Jersey default judgment. (Pl. Br. at 5.)  Plaintiff urges that Defendant is now estopped from challenging that judgment.  Even without the default replevin judgment, Plaintiff argues that the Materials should be turned over to her because Defendant "does not dispute Plaintiff's right to recover the materials, and he does not assert a right to the materials." (Id. at 11.)

Defendant cross-moves for summary judgment regarding the New Jersey default judgment.  He argues that the judgment is unenforceable because he was never properly served in that action.  Although the process server left the papers at the Long Branch house, Defendant claims he was not living there at the time and therefore that the New Jersey court lacked personal jurisdiction over him.

A default judgment is void and cannot be enforced if the rendering court did not have personal jurisdiction over the defendant.  See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 138–39 (2d Cir. 2011).  In the instant case, then, the default judgment against Defendant is enforceable only if the

10

rendering New Jersey court had personal jurisdiction over him —
that is, only if he was properly served.  The parties agree that
the Court should look to New Jersey law to determine whether
service was proper.

Plaintiff asserts that when the process server taped the
summons and complaint on the door of Marina Otis's house in
January 2001, New Jersey's service requirement was satisfied.
Plaintiff specifically relies on New Jersey Court Rule 4:4-
4(a)(1), which confers personal jurisdiction where service is
made by leaving a copy of the summons and complaint "at the
individual's dwelling place or usual place of abode with a
competent member of the household."  The parties agree that the
rule has been interpreted to refer to where the individual is
actually living on the date service is attempted. (Def. Br. at
11; Oral Arg. Tr. at 3.) See also Fid. & Deposit Co. of Md. V.
Abagnale, 234 A.2d 511, 519 (N.J. Super. Ct. Law Div. 1967)
(collecting cases).  It includes "person's permanent home, even
if he or she is temporarily staying elsewhere," but does not
extend to "a house from which defendant is absent for an
extended and continuous period of time." Bank of New York for
the Benefit of the Asset Backed Certificates Series 2007-2 v.
Tross, 2011 WL 1584426, at *4 (N.J. Super. Ct. App. Div. Apr.

28, 2011) (unpublished opinion) (citations and internal quotation marks omitted).

The dispute therefore largely turns on the particulars of Defendant's living arrangements in January 2001.  Both parties have submitted evidence on this question.  Plaintiff in particular has filed a mountain of exhibits, most of which indicate that Defendant lived at the Long Branch house in the years 1997-2000, or used it as his mailing address at various times.  For his part, Defendant asserts that he stopped living with Otis "in approximately June 1999," and did not find out about Plaintiff's New Jersey lawsuit until "[s]ometime between 2003 and 2005." (Kaspiev Dec. ¶¶ 55, 59.)  His principal evidentiary support is Otis's letter of January 4, 2001 to the New Jersey court clerk, enclosing the attempted service of process and explaining that Defendant no longer lived with her. (Otis Dec. Ex. 1.)

As the evidence makes plain, neither party has demonstrated the absence of a genuine factual dispute. See Celotex, 477 U.S. at 322-23.  Plaintiff's evidence, although voluminous, falls short as a qualitative matter because it does not establish that Defendant "actually lived" at the Long Branch address when service was attempted.  Nor does Defendant's self-serving affidavit and proffered evidence suffice, especially because he

12

offers almost no information about his living situation during the relevant periods. See, e.g., Kaspiev Dec. ¶¶ 52-58 (listing past residences but none between July 1999 and June 2001). The Court therefore concludes that a genuine dispute of material fact exists as to Defendant's residence, which precludes the entry of summary judgment on this issue.

Plaintiff makes two additional arguments concerning the validity of the default judgment, both of which miss the mark. First, she urges that Defendant should be estopped from contesting the default judgment at this late hour. (Pl. Br. at 8-10.) Although she is correct that motions for relief from a judgment must be made "within a reasonable time," Fed. R. Civ. P. 60(c), the Second Circuit has construed this restriction "exceedingly lenient[ly]." E.g., Cent. Vt. Pub. Serv. Corp. v. Herbert, 341 F.3d 186, 189 (2d Cir. 2003). "In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void 'may be brought at any time.'" Beller & Keller v. Tyler, 120 F.3d 21, 24 (2d Cir. 1997) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 60.44[5][c]). Plaintiff's argument is therefore without merit.

Second, Plaintiff insists that even if Defendant was not actually living with Ms. Otis on the date that service was

attempted, he nevertheless must have been on notice of the suit because he received other mail at Otis's house.  Even if true, this alone does not suffice to save the default judgment.  See Lapatka Assocs., Inc. v. Merrett, No. L-13310-04, 2011 WL 2636975, at *2-3 (N.J. Super. Ct. App. Div. July 7, 2011) (unpublished opinion) (where service was not accomplished under Rule 4:4-4(a)(1), trial court "should have conducted a hearing to determine whether defendant had actual knowledge of the litigation"); Sobel v. Long Island Entm't Prods., Inc., 747 A.2d 796, 800-01 (N.J. Super. Ct. App. Div. 2000) (noting that "even without a violation of due process, a default judgment will be set aside for a substantial deviation from the service of process rules").

Accordingly, summary judgment on this issue cannot be granted in favor of either party.  The Court will therefore hold an evidentiary hearing on December 18, 2013 at 11:00 A.M. to determine Defendant's residential status as of January 2001, whether he was on notice of the litigation prior to the entry of default judgment, and any other facts that are relevant to the limited jurisdictional question.

## 2.  Plaintiff's Claim to Possession of the Materials

Plaintiff argues that she is entitled to possession of the Materials even without the New Jersey default judgment, because

14

Defendant has no ownership interest in them.  Plaintiff further offers that, even if this Court determines that Defendant is entitled to money damages, she can post a bond to cover these damages in exchange for possession of the impounded Materials.

Contrary to Plaintiff's contention, Defendant has indeed asserted an ownership interest in the prints that Plaintiff purportedly tendered to him in December 1997. (Def. Br. at 4; Oral Arg. Tr. at 13–14.)  It would therefore be inappropriate for the Court to return those prints to either party while this litigation continues.  They will remain impounded.

Plaintiff's request for possession of the negatives is a closer call.  Defendant has not asserted an ownership right in the negatives; nevertheless, they are part and parcel of the parties' ongoing dispute about Defendant's stewardship of the Materials during his tenure as agent.  Given that the parties have repeatedly tussled about not only the number and condition but also the very location of the negatives, it would be imprudent to disturb the impoundment order of March 29, 2011 — which, after all, was entered at Plaintiff's request. See Rothstein Letter of March 15, 2011.  Accordingly, the Materials (both the prints and the negatives) shall remain at the Cirkers storage facility pending the resolution of this case, should that happy day ever arrive.

### C.   Defendant's Motion for Summary Judgment on His Claim to the Corbis Royalty Stream

Defendant states that under his agency agreement with Evgeny, he is entitled to 50 percent of the royalties arising out of the Corbis licensing agreement.  He points out that he and Evgeny split the initial advance from Corbis, but that Plaintiff has not compensated him for his share of the royalties that accrued after the initial advance ran out in the summer of 2005.

Plaintiff opposes the motion on several grounds.  As a preliminary matter, she asserts that Defendant's claim is time-barred because the six-year statute of limitations on Defendant's breach claim should run from when Plaintiff took steps to terminate Defendant's agency from 1999 through 2001. The Court rejects this assertion.  Defendant filed his counterclaim on February 25, 2011, which is less than six years after Plaintiff's alleged breach — specifically, when she began to get additional royalty payments from Corbis but failed to compensate Defendant in 2005 and 2006.  Defendant also argues in a footnote that Plaintiff's breach was a "continuing wrong" that caused the limitations period to reset each time Plaintiff received a check from Corbis and didn't remit Defendant's portion. (Def. Reply at 7 n.6.)  There is no need for the Court

to reach this argument because the counterclaim is timely
without it.

Plaintiff also contends that Defendant's claim for
additional royalties is based solely on his agency agreement
with Evgeny, and that the claim should fail because he breached
his fiduciary duties as agent by failing to preserve and account
for the negatives once Corbis returned them to him.  Defendant
counters that the agency agreement did not require him to
preserve the negatives. (Def. Reply at 7-8.)  Counsel for the
defense further opined at oral argument that the issues of the
royalty stream and Plaintiff's breach of fiduciary duty claim
are separate, purportedly because the breach claim primarily
concerns the art prints rather than the negatives scanned by
Corbis. (Oral Arg. Tr. at 16-17.)

Both of Defendant's counterarguments fall short.  First,
Defendant instructed Corbis to send the negatives to him after
they were scanned. (Rothstein Aff. Ex. 5.)  Having bargained for
possession of the negatives, it follows that Defendant obligated
himself not to damage them while they remained in his
possession.  Second, to the extent defense counsel argues that
Plaintiff's breach claim does not concern the negatives, that
argument is plainly belied by Plaintiff's submissions. See Pl.
Reply at 14-15, Anna Efimovna Khaldei Aff. of Feb. 19, 2013

¶¶ 19-22.  We are thus left with Defendant's claim to the royalty stream, weighed against Plaintiff's allegation — as expressed not only in the withdrawn portion of her motion but also in her opposition to Defendant's cross-motion — that Defendant breached his duties as agent, negating his claim to any royalties he might otherwise be owed.

Once again, factual issues preclude the entry of summary judgment.  It is impossible for the Court to determine the validity of Plaintiff's opposition before the record is complete with respect to the state of the negatives.  If Plaintiff ultimately prevails in showing that Defendant is liable for damage to the Materials, that <u>may</u> bar recovery by Defendant of continued royalties.  It may also turn out that the question of how the Materials came to be damaged cannot be resolved by summary judgment, even after discovery has closed, if genuine disputes of fact persist.

Summarily, Defendant's motion is premature for the same reason that Plaintiff's liability motion was before it was withdrawn:  the incomplete record.  The motion is therefore denied without prejudice.  In so ruling, the Court notes that it has not considered the expert declarations submitted by Plaintiff, given that one of them was submitted for the first time on reply, and also that it was Plaintiff who sought and

18

received the stay of expert discovery.  Even if these issues are susceptible to resolution by summary judgment — itself an unproven proposition — there must be a fully developed record, with submissions from both sides' experts.

### III.  Conclusion

For the foregoing reasons, the parties' cross-motions regarding the New Jersey default judgment are stayed pending an evidentiary hearing on December 18, 2013 at 11:00 A.M.  The Court will be disinclined to adjourn this hearing absent a resolution of the case or another settlement conference with Judge Gorenstein.

Plaintiff's application to take possession of the Materials is denied.  Defendant's motion for summary judgment as to the Corbis royalty stream is likewise denied.  Defendant's motion may be renewed, and both parties' briefing supplemented, if and when expert discovery is ever completed.

The Court recognizes that, more than eight months after the instant motions were briefed, this Opinion resolves very little as a practical matter.  It must be said, however, that the parties and their counsel have no one but themselves to blame for the time and energy wasted in litigating these motions prior to the close of discovery.  This is particularly true of Plaintiff, who (1) initiated the early filing of summary

19

judgment motions, (2) sought and obtained a stay of relevant discovery, and (3) saw fit to file, litigate, and relitigate a meritless related motion before Judge Gorenstein and then this Court.


**SO ORDERED.**

Dated:    New York, New York
          December  5  , 2013

                                        John F. Keenan
                              United States District Judge