# Law Office of Daniel J. Rothstein, P.C.

Юридическая контора Д. Ротштейна
(профессиональная корпорация, штат Нью-Йорк)

747 Third Avenue, 32nd Floor
New York, NY  10017
www.danielrothstein.com

tel. 212-207-8700
fax 212-207-8710
Efax 646-304-5476
djr@danielrothstein.com

August 19, 2014

Hon. John F. Keenan
United States District Court
500 Pearl St., Room 1930
New York, NY 10007

Re:  *Khaldei v. Kaspiev,* No. 10-CV-8328 (JFK) (GWG)

Dear Judge Keenan:

On Plaintiff's behalf, I am writing with regard to two matters that I request discussing at the conference scheduled for August 21, 2014.

Plaintiff's proposed renewed motion for summary judgment

When I submitted Plaintiff's proposed motion on June 30, Kaspiev's attorneys did not address its merits, but rather complained that I did not summarize the entire motion in my accompanying letter to the Court.  Since then, defense counsel must have formed their preliminary views on Plaintiff's arguments.  In order to clarify whether a ruling on the proposed motion could advance the litigation, I request that the Court invite defense counsel to submit a letter stating their views.

My June 30 letter did summarize the most important legal argument in the proposed motion:  "New York's Arts and Cultural Affairs Law bars the purported oral agreement under which Defendant Kaspiev asserts a 50% ownership interest in the photographic prints impounded with the Court."  Kaspiev's attorneys have not addressed this argument, other than to assert that it contradicts the statute's "plain language."  New York case law refutes this assertion.  *See Wesselmann v. International Images, Inc.,* 172 Misc.2d 247, 252 (Sup. Ct., N.Y. Co. 1996) (art delivered to merchant for sale is statutory "trust property" belonging to artist, "even when the art merchant makes a financial investment in the art"), *aff'd,* 259 A.D.2d 448 (1st Dep't 1999).

Regarding another argument based on the Art and Cultural Affairs Law, the Court's decision of August 12, 2014 dismissed as "curious" (Op. 7) the notion that due process would permit imposing on Kaspiev an obligation to inform Plaintiff of his residence and the location of Plaintiff's property.  However, it is well settled, for example, that due process is satisfied by constructive notice to a corporation's registered address.  *See Trustees of Local 531 v. American Industrial Gases, Inc.,* 708 F. Supp.2d 272, 275-76 (E.D.N.Y. 2010) (service through Secretary of State to registered but obsolete address satisfied due process, although defendant did not receive actual notice of lawsuit) (cited in Pltf. SJ Reply, p. 6, ECF 77).

The Court's Memorandum Opinion & Order dated August 12, 2014

       The Court's August 12, 2014 decision addressed almost none of Plaintiff's arguments regarding the Court's decision of June 9, 2014.  For example:

1.     Plaintiff explained in detail several logical and factual errors in the Court's rejection of the plain meaning of the February 2000-2001 money orders, where defendant Kaspiev wrote that Marina Otis's address was his own address.  (Mem. 3-5; Reply 4-7)  A factual finding is "clearly erroneous" if it is "illogical or implausible."  *Siewe v. Gonzales,* 480 F.3d 160, 167-68 (2d Cir. 2007) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 574 (1985)).  The Court did not mention any of Plaintiff's arguments regarding the money orders.  Rather, the Court summarily dismissed as "ipse dixit" all of Plaintiff's challenges to the Court's logic on various issues, and the Court referred generally to the "ambiguous" documentary record in the case.  (Op. 4-5)  The money orders are not ambiguous.  Only a logical reason would justify disregarding them.

2.     The Court's August 12 decision indicated that Plaintiff must "disprove the consistent position of Defendant and Otis that Defendant did not live with her in January 2001."  (Op. 3)  In its June 9 decision, the Court stated:  "As a general matter, the Court found Defendant's testimony to be lacking in credibility, and there is good reason to view his self-serving statements on the jurisdictional question with skepticism."  (Op. 19)  This finding, together with the evidence tying Kaspiev to the Long Branch address, including the money orders (Item 1 above), should result in a rejection of his position.  (Mem. 2, Reply 2-4)  The Court did not address this argument.  Otis's written statements are discussed in Item 3 below.

3.     A New Jersey defendant who contends that process was served at the wrong address cannot rely on a conclusory denial that he lived there, but rather must show that he was living elsewhere.  This argument is supported by the holdings in all decisions cited by the parties and the Court and in all cases cited in those decisions.  Only *dicta* in one case, *A&S Manufacturing v. Wetzler*, states that a defendant need not show a new residence.  (Mem. 9-11; Reply 8-9)  As noted in Item 2 above, the Court found Kaspiev's testimony on the jurisdictional issue to be "lacking in credibility."  Otis's letter to the New Jersey court and affidavit to this Court merely stated that Kaspiev did not live with her at the time of service of process.  Otis did not state where Kaspiev did live at that time, and this Court did not accept Kaspiev's assertion that he lived in Brooklyn.  Otis's assertions, even if unrebutted, are the kind of conclusory denials that cannot defeat New Jersey jurisdiction, and are cumulative to Kaspiev's discredited denials.  (Reply 11)  The Court's August 12 decision did not mention this argument.

4.     Having found Kaspiev's testimony about his residence in January 2001 and his purported estrangement from Otis to be "lacking in credibility," the Court contradicted itself by accepting Otis's written statements – which were essentially identical to Kaspiev's discredited testimony – about the same issues.  Otis's credibility is further impeached by the unrebutted evidence that she intercepted communications from Kaspiev's attorney in 1999.  (Mem. 8-9, Reply 10-11)  The Court dismisses these arguments by stating that it is "self-evident" why the Court accepted Otis's written statements as credible.  (Op. 4, fn. 1)  Regarding the nature of the Kaspiev-Otis relationship, the Court ignores the fact that Kaspiev admitted on the witness stand that in January

2014, he called Otis his "girlfriend" in a police report, and a few moments later he tried to retract that testimony. (Reply 11; Post-hearing Br. 11-12) Rather, the Court only explains the exclusion of the report itself as an exhibit. (Op. 4, fn. 1) Similarly, the Court ignores the property record, which was received in evidence, stating that Kaspiev and Otis called themselves husband and wife. (Ex. 18) Instead, the Court only explains the exclusion of a similar proposed exhibit. (Op. 4, fn. 1) The couple's identical false statements to this Court understating their relationship impeach the credibility of Otis's denial that Kaspiev was still living with her in January 2001. The Court has never addressed this argument.

5.      Plaintiff argued that it was sufficient to serve process at the address that Kaspiev registered, as required by N.J. Stat. 56:1-2, for his "Abcot" proprietorship, including for service of process, as the statute also requires. The Court's August 12 decision held that the New Jersey complaint was lacking for not naming Abcot as a defendant. (Op. 5) Contrary to the Court's holding, due process depends on whether the pleading as a whole, not only the caption, provides notice to the defendant. *JCG v Ercole*, 2014 WL 1630815, *16 (S.D.N.Y. Apr. 24, 2014). The New Jersey complaint, including its first exhibit, the "Kaspiev d/b/a Abcot" agency agreement, cited throughout the complaint, made it clear that the lawsuit concerned the Abcot business. (Mem. 15, Reply 12) Abcot is not a legal entity. Kaspiev is personally responsible for all Abcot business. Including Abcot in the caption would not have affected Kaspiev's liability.

        The Court states that Plaintiff "improperly raised for the first time after the hearing" the argument that Otis should be considered a "managing agent" of Abcot for purposes of service of process. (Op. 5) Contrary to this statement, the issue of Kaspiev's registration at Otis's address was discussed at length at the evidentiary hearing, including in response to the Court's questions. (Tr. 20:21- 29:18) And service of process at Otis's home is dictated by N.J. Stat. 56:1-2, N.J. Stat. 2A:15-30.1(b), and N.J. Court Rule 4:4-4(a)(1, 4, 5)  (Pltf. Post-hearing Br. 24)

        It is regrettable that instead of addressing Plaintiff's arguments, the Court continues to indulge in pejorative, general, and seemingly angry rhetoric. Nevertheless, I request a discussion of whether the Court is willing to actually confront Plaintiff's arguments regarding the June 9 decision.

                                                 Respectfully submitted,
                                                 /s/
                                                 Daniel Rothstein

cc:  Margaret Dale, Jennifer Jones, Victoria Loughery, John Browning (counsel for Defendant)
     Joshua Abramson (co-counsel for Plaintiff)